PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

JAMES MCKINNEY,
            *Plaintiff-Appellee,*

v.

RICHLAND COUNTY SHERIFF'S
DEPARTMENT; ROY LIVINGSTON,
Richland County Sheriff
Department; SHERIFF OF RICHLAND
COUNTY,
            *Defendants-Appellants.*

No. 05-6423

Appeal from the United States District Court
for the District of South Carolina, at Columbia.
Margaret B. Seymour, District Judge.
(CA-03-2207-3-24)

Argued: October 25, 2005

Decided: December 12, 2005

Before LUTTIG, WILLIAMS, and MICHAEL, Circuit Judges.

---

Reversed by published opinion. Judge Luttig wrote the opinion, in
which Judge Williams and Judge Michael joined.

---

## COUNSEL

**ARGUED:** Andrew Frederick Lindemann, DAVIDSON, MORRI-
SON & LINDEMANN, P.A., Columbia, South Carolina, for Appel-
lants. Donald Gist, GIST LAW FIRM, Columbia, South Carolina, for

Appellee. **ON BRIEF:** William H. Davidson, II, Robert D. Garfield, DAVIDSON, MORRISON & LINDEMANN, P.A., Columbia, South Carolina, for Appellants. DeAndrea Gist Benjamin, GIST LAW FIRM, Columbia, South Carolina; Ernest W. Cromartie, III, CROMARTIE LAW FIRM, L.L.P., Columbia, South Carolina, for Appellee.

---

**OPINION**

LUTTIG, Circuit Judge:

Plaintiff-appellee James McKinney claims that defendant-appellant Roy Livingston violated his clearly established Fourth Amendment rights by arresting him on two occasions pursuant to warrants that were not supported by probable cause. Livingston moved for summary judgment below on grounds of qualified immunity, but that motion was denied. For the reasons that follow, we conclude that Livingston's motion should have been granted and we therefore reverse the judgment of the district court.

I.

This appeal arises out of two instances in which defendant-appellant Roy Livingston, a youth crimes investigator in the Richland County Sheriff's Department, procured and executed warrants for the arrest of plaintiff-appellee James McKinney, a teacher at an elementary school for emotionally-challenged children.

The first warrant arose out of allegations by one of McKinney's students, a nine-year-old girl, that McKinney grabbed her neck and choked her. On the day of the alleged assault, the girl's mother contacted the Sheriff's Department, and an agent met the girl and her mother at the hospital where he interviewed them, prepared an incident report detailing their allegations, observed "visible injuries, specifically, fresh finger marks around [the girl's] neck," and photographed the injuries. J.A. 70.

Two days later, Livingston, who had been assigned to the case, interviewed the girl and her mother and found their statements to be

consistent with their earlier report. *Id.* at 86-87. Livingston then met with Jonathan Gasser, a prosecutor, who told Livingston that there was probable cause to seek an arrest warrant against McKinney for assault and battery, but recommended that he attempt to interview McKinney. *Id.* at 87-88. According to McKinney, Livingston never interviewed him or anyone else at the school who was present at the time of the alleged assault and he refused to meet with the school's attorney.

On May 22, 2001, approximately three weeks after the alleged assault, Livingston prepared an arrest warrant affidavit against Mc-Kinney for assault and battery describing the allegations made by the girl and her mother. *Id.* at 88. He then delivered the proposed affidavit to a magistrate's office for review by the girl's mother and consideration by the magistrate. *Id.* During a conference at which Livingston was not present, the girl's mother attested to the allegations to the magistrate and the magistrate issued the warrant. *Id.* The warrant was entered on May 23, 2001 and executed by Livingston on May 30, 2001. *Id.* at 89, 92. The case went to a grand jury, which issued a no bill.

The second warrant arose out of allegations from another of McKinney's students that McKinney had assaulted him in December 2000, six months before the alleged assault of the girl. At that time, Livingston investigated the allegations and decided not to pursue a warrant. However, in October 2001, Livingston resurrected the investigation and procured the second warrant, which, like the first warrant, was signed not by Livingston, but by the victim's mother. Livingston again arrested McKinney, but the magistrate dismissed the case at the preliminary hearing.

On May 23, 2003, McKinney filed a complaint alleging, among other things, a cause of action against Livingston under 42 U.S.C. § 1983 on the grounds that Livingston violated his Fourth Amendment rights by arresting him without probable cause. Livingston moved for summary judgment, claiming that he was entitled to qualified immunity. The district court denied his motion, concluding that "it would be clear to a reasonable officer that probable cause did not exist for either arrest." *Id.* at 276. This appeal followed.

## II.

We turn first to McKinney's claim that Livingston violated his clearly established Fourth Amendment rights by procuring and executing the first arrest warrant.[1] In order to determine whether an officer is entitled to qualified immunity, we must first determine "whether a constitutional right would have been violated on the facts alleged." *Saucier* v. *Katz,* 533 U.S. 194, 200 (2001). If the facts, viewed in the light most favorable to the plaintiff, "do not establish a violation of a constitutional right, the inquiry ends, and the plaintiff cannot prevail." *Parrish* v. *Cleveland*, 372 F.3d 294, 301 (4th Cir. 2004). "Next, assuming that the violation of the right is established, courts must consider whether the right was clearly established at the time such that it would be clear to an objectively reasonable officer that his conduct violated that right." *Bailey* v. *Kennedy*, 349 F.3d 731, 739 (4th Cir. 2003). "In determining whether the right violated was 'clearly established,' we define the right in light of the specific context of the case, not as a broad general proposition." *Parrish*, 372 F.3d at 301 (internal quotation marks omitted). "If the right was not 'clearly established' in the specific context of the case — that is, if it was not clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted — then the law affords immunity from suit." *Id*. (internal quotation marks omitted).

In this case, we need go no further than the first stage of the *Saucier* analysis. Even viewing the evidence in the light most favorable to McKinney, we conclude that the first arrest warrant was based on probable cause and that McKinney thus suffered no violation of his constitutional rights.[2] The warrant was based primarily on the vic-

---

[1]Livingston argues that an officer can never be held liable for executing a facially valid arrest warrant where the affiant is the victim, not the officer. Because we conclude that McKinney's Fourth Amendment rights were not violated, we do not reach this argument.

[2]The district court erroneously concluded that "[t]he assessment of whether the officer's conduct violated a constitutional right requires the court to determine whether an objective law officer could reasonably have believed probable cause to exist, not whether probable cause for the warrant did in fact exist." J.A. 271 (internal quotation marks omitted).

tim's identification of her attacker. *See Torchinsky* v. *Siwinski*, 942 F.2d 257, 262 (4th Cir. 1991) ("It is surely reasonable for a police officer to base his belief in probable cause on a victim's reliable identification of his attacker. Indeed, it is difficult to imagine how a police officer could obtain better evidence of probable cause than an identification by name of assailants provided by a victim, unless, perchance, the officer were to witness the crime himself.") (internal citation omitted). The victim made that identification on two separate occasions to two separate officers, and her account was supported by documented evidence of physical injury and by the fact that another of McKinney's students had made similar allegations. This evidence was "sufficient to warrant a prudent man in believing that [McKinney] had committed or was committing an offense" and it therefore gave rise to probable cause. *See Fisher* v. *Washington Metro. Area Transit Authority*, 690 F.2d 1133, 1138 (4th Cir. 1982) (quoting *Gerstein* v. *Pugh*, 420 U.S. 103, 111 (1975)).

The district court concluded that Livingston violated McKinney's constitutional rights because, "although there may have been sufficient evidence for an arrest warrant to be issued, no reasonable officer investigating the case would have found probable cause to exist at that point in the investigation."[3] J.A. 274. The district court empha-

---

The question at stage one of the qualified immunity analysis is not whether the officer was reasonable, but whether a constitutional right was violated. If the warrant was supported by probable cause, then McKinney's Fourth Amendment rights were not violated, regardless of whether Livingston's belief that there was probable cause was reasonable. *See Whren* v. *United States*, 517 U.S. 806, 817 (1996) ("[I]n principle every Fourth Amendment case, since it turns upon a 'reasonableness' determination, involves a balancing of all relevant factors. With rare exceptions . . . however, the result of that balancing is not in doubt where the search or seizure is based upon probable cause.").

[3]This statement underscores the district court's misapplication of the law. If there was "sufficient evidence for an arrest warrant to be issued," as the district court recognized there may have been, then by definition there was probable cause. *See* U.S. Const. amend. IV (providing that "no Warrants shall issue, but upon probable cause"). And if there was probable cause, then the inquiry ends at stage one and we never reach the question of the officer's reasonableness.

sized that Livingston did not visit the crime scene, did not interview anyone other than the girl and her mother, failed to attend the scheduled meeting with the school district's attorney, and failed to return the attorney's and the school principal's calls. *Id*. In other words, the district court concluded that Livingston conducted an inadequate investigation and ignored potentially exculpatory evidence and that therefore neither he nor any objectively reasonable officer could have believed there was probable cause. *Id*.

The district court erred. The fact that Livingston did not conduct a more thorough investigation before seeking the arrest warrant does not negate the probable cause established by the victim's identification. *See Wadkins* v. *Arnold*, 214 F.3d 535, 543 (4th Cir. 2000) ("The question before us is not whether [the officer] exhausted every potential avenue of investigation."); *Torchinsky*, 942 F.2d at 264 ("It will, of course, always be possible to contend in court that an arresting officer might have gathered more evidence, but judges cannot pursue all the steps a police officer *might* have taken that *might* have shaken his belief in the existence of probable cause."). And there is no evidence that Livingston was even aware of, much less that he ignored, exculpatory evidence.[4] The district court erred in concluding that Livingston ignored exculpatory evidence when he failed to conduct more interviews or discuss the incident with the school's representatives. *See* J.A. 274. At most, these omissions amounted to a failure to pursue potentially exculpatory leads, and such does not negate probable cause. *See Wadkins*, 214 F.3d at 541 ("Although an officer may not disregard readily available exculpatory evidence of which he is aware, the failure to pursue a potentially exculpatory lead is not sufficient to negate probable cause.").

Even if we were to conclude that the warrant was not supported by

---

[4]McKinney argues that the affidavit of the school district's attorney, which cites statements of witnesses that contradicted the victim's allegations, *see* J.A. 155, shows that Livingston ignored exculpatory evidence. However, there is no evidence in the record that the statements were ever furnished to Livingston or otherwise brought to his attention. Of course, to ignore exculpatory evidence, one must first be aware of it, and there is no evidence that Livingston was ever aware of the potentially exculpatory statements or any other exculpatory evidence.

probable cause, Livingston would nonetheless be entitled to qualified immunity because the absence of probable cause would not have been evident to an objectively reasonable officer in these circumstances.[5] Both a prosecutor and a neutral and detached magistrate independently reviewed the evidence and concluded that there was probable cause. A reasonable officer would not second-guess these determinations unless probable cause was plainly lacking, which it was not. *See id.* at 541, 543 ("Detective Arnold's conference with the Commonwealth's Attorney and the subsequent issuance of the warrants by a neutral and detached magistrate weigh heavily *toward* a finding that Detective Arnold is immune. . . . [T]here is simply no basis for a rule that would require law enforcement officers to take issue with or second-guess the considered judgments of prosecutors and magistrates."); *Torchinsky*, 942 F.2d at 262 ("[The magistrate's determination of probable cause provide[s] additional support for [defendant's] claim that he acted with objective reasonableness.").

### III.

We turn now to the second arrest. Livingston argues on appeal, as he did below, that McKinney did not plead a violation of his Fourth Amendment rights with respect to the second arrest. The district court rejected this argument, concluding that "[the complaint identifies two separate instances when arrest warrants were issued." J.A. 264. Again, the district court erred.

"While a plaintiff is not charged with pleading facts sufficient to prove [his] case, as an evidentiary matter, in [his] complaint, a plaintiff *is* required to allege facts that support a claim for relief." *Bass* v.

---

[5]McKinney argues that, because the right to be free from arrests without probable cause is clearly established, a reasonable officer would have known that Livingston's conduct was unlawful. But, of course, this identifies the right at too high a level of generality and begs the relevant question — whether it would have been clear to a reasonable officer in these circumstances that there was no probable cause. *See Taylor* v. *Waters*, 81 F.3d 429, 434 (4th Cir. 1996) ("Although the right to be free from seizures not founded upon probable cause was well established prior to Taylor's 1992 arrest, defining the applicable right at that level of generality is not proper.") (internal citation omitted).

*E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003). To do this, the plaintiff must "allege facts sufficient to state all the elements of [his] claim." *Id*. McKinney fails this test. Not only did he not allege facts sufficient to state each of the elements of a Fourth Amendment violation with respect to the second arrest, he did not even mention the second arrest in his complaint. The district court was simply incorrect when it asserted that the complaint identifies two separate instances when arrest warrants were issued. It cited paragraphs 9 and 14 of the complaint. J.A. 264. However, paragraph 9 refers only to the warrant that was executed on May 30, 2001, *i.e.*, the first warrant. *See id*. at 8. And paragraph 14, which is the only passage of the complaint that mentions anything relating to the second incident, states only that "[i]n May of 2001, Defendant Livingston filed similar charges against the Plaintiff that were also dismissed by the court." *Id*. at 9. Paragraph 14 does not mention that there was a second warrant or a second arrest, much less that the warrant and the arrest were not based on probable cause. In short, McKinney's complaint, which does not even mention the second warrant or the second arrest, did not put anyone on notice that he was alleging that Livingston violated his Fourth Amendment rights by procuring and executing the second arrest warrant.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is reversed and the case is remanded with instructions to enter judgment for appellant on his claim of qualified immunity.

*REVERSED*