**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

STEVEN LEFEMINE, d/b/a Columbia
Christians for Life,

*Plaintiff-Appellant,*

v.

DAN WIDEMAN, individually and in
his official capacity; MIKE
FREDERICK, individually and in his
official capacity; LONNIE SMITH,
individually and in his official
capacity; BRANDON STRICKLAND,
individually and in his official
capacity; TONY DAVIS, Sheriff, in
his official capacity,

*Defendants-Appellees.*

No. 10-1905

STEVEN LEFEMINE, d/b/a Columbia
Christians for Life,

*Plaintiff-Appellee,*

v.

MIKE FREDERICK, individually and
in his official capacity,

*Defendant-Appellant,*

and

No. 10-2014

DAN WIDEMAN, individually and in
his official capacity; LONNIE SMITH,
individually and in his official
capacity; BRANDON STRICKLAND,
individually and in his official
capacity; TONY DAVIS, Sheriff, in
his official capacity,

*Defendants.*

Appeals from the United States District Court
for the District of South Carolina, at Anderson.
Henry M. Herlong, Jr., Senior District Judge.
(8:08-cv-03638-HMH)

Argued: November 8, 2011

Decided: March 5, 2012

Before DUNCAN, WYNN, and DIAZ, Circuit Judges.

Affirmed by published opinion. Judge Wynn wrote the opinion, in which Judge Duncan and Judge Diaz joined.

**COUNSEL**

**ARGUED:** Steven W. Fitschen, NATIONAL LEGAL FOUNDATION, Virginia Beach, Virginia, for Appellant/Cross-Appellee. Andrew Lindemann, DAVIDSON & LINDEMANN, PA, Columbia, South Carolina, for Appellees/Cross-Appellant. **ON BRIEF:** Douglas E. Myers, NATIONAL LEGAL FOUNDATION, Virginia Beach, Virginia, for Appellant/Cross-Appellee. Robert D. Garfield, DAVIDSON & LINDEMANN, PA, Columbia, South Carolina, for Appellee/Cross-Appellant Mike Frederick. Russell W. Harter, Jr., CHAPMAN, HARTER & GROVES, P.A., Greenville, South Carolina, for Appellees Wideman, Smith, Strickland, and Davis.

---

**OPINION**

WYNN, Circuit Judge:

In November 2005, Steven C. Lefemine and members of Columbia Christians for Life ("Plaintiff"), a South Carolina anti-abortion organization, were asked by employees of the Greenwood County Sheriff's Department ("Defendants") to remove large, graphic signs depicting aborted fetuses that they were using as part of a roadside demonstration. As the sole proprietor of Columbia Christians for Life, Lefemine subsequently brought an action under 18 U.S.C. § 1983 against Defendants in their individual and official capacities, alleging violations of his and Columbia Christians for Life members' First Amendment rights. The complaint sought injunctive and declaratory relief, damages, and attorney's fees under 18 U.S.C. § 1988.

Concluding that Defendants had violated Plaintiff's First Amendment rights, the district court entered summary judgment in favor of Plaintiff on those claims. Nonetheless, the

district court held that Defendants were entitled to qualified immunity from suit in their individual capacities because the specific rights at issue were not clearly established at the time of the violations. In addition, the district court denied Plaintiff's request for attorney's fees but granted Plaintiff injunctive relief.

Plaintiff and Defendants cross-appeal different portions of the district court's opinion and order. For the reasons that follow, we affirm.

I.

The basic facts underlying this cause of action are not in dispute. Plaintiff is an organization that "actively seeks to raise public awareness of the horrors of abortion throughout the State of South Carolina." J.A. 19.[1] Pursuant to this mission, Plaintiff's members regularly "preach and carry signs critical of abortion in many public fora throughout the State of South Carolina," signs which Plaintiff explains "depict aborted babies in order to shock the consciences of those who see the signs to the horror of abortion." J.A. 19.

On November 3, 2005, as part of its "Show the Truth Tour" around South Carolina, about twenty of Plaintiff's members stopped in Greenwood County and "began to establish a Christian pro-life witness on the public sidewalks at the intersection of Montague Street and U.S. 25/S.C. 72 Bypass," which is the "busiest intersection" in Greenwood County. J.A. 19-20, 65. They began preaching, distributing anti-abortion literature, and carrying large anti-abortion signs, including several with color photographs of aborted and mutilated fetuses, later described as "graphic" by Plaintiff in its own complaint.

---

[1]Pagination for citations to the record refer to the joint appendix ("J.A.").

Shortly after the start of Plaintiff's demonstration, Major Lonnie Smith of the Greenwood County Sheriff's Office, an individually named defendant in this lawsuit, received a phone call from Lieutenant Randy Miles, notifying him of complaints that had been received from motorists driving by the intersection. In a later deposition, Major Smith stated that he was informed that protesters were in the roadway with the signs, and that one mother had called to say that her five-year-old son was "screaming, crying" after seeing the signs. J.A. 360. Major Smith and Deputy Brandon Strickland, another named defendant, proceeded to the intersection to investigate further.

In the meantime, Lieutenant Miles approached Lefemine to tell him about the "complaints about the graphic photographs and this was causing a disturbance in the traffic flow at th[e] intersections." J.A. 360. Major Smith observed the individuals holding signs and megaphones, and Deputy Strickland took several pictures of the scene. Major Smith called Chief Deputy Mike Frederick, also a named defendant, to report the events to him. Chief Deputy Frederick directed him to tell Plaintiff's members that because of the complaints about the graphic pictures, "they could continue to protest but they would either have to put away or take down the signs or . . . possibly be ticketed for breach of peace." J.A. 361. The transcript of the ensuing conversation between Major Smith and Lefemine, as quoted in the district court's opinion and order, indicates that Major Smith mentioned only the complaints about the graphic nature of the photographs and not any traffic or safety concerns when he spoke to Lefemine.

Lefemine responded that the Sheriff's Office was violating Plaintiff's First Amendment rights, to which Major Smith replied, "You do not have a right to be offensive to other people in that manner," though he also maintained that Plaintiff's members only needed to take the signs down but could remain on the sidewalk. J.A. 362. Following the conversation, Plain-

tiff's members packed up their signs and left shortly thereafter.

A year later, an attorney for Plaintiff sent a letter to Sheriff Dan Wideman, also a named defendant, informing him that Plaintiff's members intended to return to Greenwood County "in the near future to exercise their First Amendment freedoms by highlighting the national tragedy of abortion." J.A. 362. The letter included a warning that "any further interference with Columbia Christians for Life's message" by the Greenwood County Sheriff's Office would "leave [Plaintiff] no choice but to pursue all available legal remedies."[2] J.A. 362. Chief Deputy Frederick answered that the Department's actions in 2005 were based on Plaintiff's methodology, not its content, and "should we observe any protester or demonstrator committing the same act, we will again conduct ourselves in exactly the same manner: order the person(s) to stop or face criminal sanctions." J.A. 363. Subsequent demonstrations by Plaintiff on the city side of the intersection in 2006 and 2007 occurred without incident.

On October 31, 2008, Plaintiff filed a complaint against Wideman, Frederick, Smith, and Strickland, alleging violations of his First Amendment rights. Plaintiff amended the complaint on February 27, 2009, to include Sheriff Tony Davis, who had been elected to replace Wideman, as a defendant. Following cross-motions for summary judgment, as well as motions in opposition from all parties, the district court held a hearing on June 23, 2010.

On July 8, 2010, the district court entered an opinion and order finding that Defendants had infringed on Plaintiff's First Amendment rights to free speech, peaceable assembly, and free exercise of religion, but were entitled to qualified immu-

---

[2]A similar letter was sent to the Chief of the City of Greenwood Police Department, who responded that Plaintiff was welcome to visit and protest.

nity for their actions. The district court declined to award Plaintiff attorney's fees but did enjoin Defendants "from engaging in content-based restrictions on Plaintiff's display of graphic signs without narrowly tailoring its restriction to serve a compelling state interest." J.A. 378.

## II.

Although the parties have filed cross-appeals, no one challenges the fundamental conclusion that Defendants' actions were an impermissible content-based restriction on Plaintiff's First Amendments rights. Accordingly, for purposes of this appeal, we accept—as we must—the premise that Defendants' actions were an impermissible content-based restriction on Plaintiff's First Amendments rights. *See generally Edwards v. City of Goldsboro*, 178 F.3d 231, 241 n.6 (4th Cir. 1999) (citing Fed. R. App. P. 28(a)(9)(A) and noting that issues not briefed or argued on appeal are deemed abandoned). However, in so doing, we pass no judgment on whether the district court was correct in its determination.

On appeal, Plaintiff contends that the district court (1) erred in granting Defendants qualified immunity; (2) abused its discretion by failing to rule on Plaintiff's request for declaratory relief; and (3) abused its discretion by failing to award Plaintiff attorney's fees. Defendants assert only that the district court erred in awarding prospective injunctive relief against Frederick, who is no longer employed by the Greenwood County Sheriff's Office. We address each of these issues in turn.

## A.

First, Plaintiff argues that the district court erred by granting Defendants qualified immunity, asserting that they violated a clearly established right, and reasonable officers should have known that their actions violated that right. We review de novo the district court's rulings on the parties'

respective motions for summary judgment on grounds of qualified immunity. *Pritchett v. Alford*, 973 F.2d 307, 313 (4th Cir. 1992).

The doctrine of qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks and citation omitted); *see also Saucier v. Katz*, 533 U.S. 194, 202 (2001) ("The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."), *overruled in part on other grounds by Pearson*, 555 U.S. at 236.

Further guiding our analysis, the Supreme Court has stated:

> Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.

*Pearson*, 555 U.S. at 231 (internal quotation marks and citation omitted). Thus, a defense of qualified immunity "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Waterman v. Batton*, 393 F.3d 471, 476 (4th Cir. 2005) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)); *Pearson*, 555 U.S. at 244 ("The principles of qualified immunity shield an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law.").

When determining if a right is clearly established at the time of the alleged infringement, we are faced first with the critical determination of the nature itself of the right at issue. To characterize the right too broadly would upset the delicate balance "between the interests in vindication of citizens' constitutional rights and in public officials' effective performance of their duties by making it impossible for officials reasonably to anticipate when their conduct may give rise to liability for damages." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (internal quotation marks, alteration, and citation omitted).

Accordingly, we must "define the right in light of the specific context of the case, not as a broad general proposition . . . . that is, [whether it was] clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted." *McKinney v. Richland Cnty. Sheriff's Dep't*, 431 F.3d 415, 417 (4th Cir. 2005) (internal quotation marks and citation omitted); *Jackson v. Long*, 102 F.3d 722, 728 (4th Cir. 1996) ("To determine whether a federal right was clearly established at the time of the defendants' alleged conduct, we focus not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." (internal quotation marks and citation omitted)).

We note as well that we have long held that it is case law from this Circuit and the Supreme Court that provide notice of whether a right is clearly established:

> In determining whether a right was clearly established at the time of the claimed violation, courts in this circuit ordinarily need not look beyond the decisions of the Supreme Court, this court of appeals, and the highest court of the state in which the case arose. . . . If a right is recognized in some other circuit, but not in this one, an official will ordinarily retain the immunity defense.

*Edwards*, 178 F.3d at 251 (internal quotation marks, alterations, and citation omitted).

Turning to the situation faced by Defendants in this case, contrary to Plaintiff's assertion that the right at issue here should be framed as whether it was clearly established that law enforcement is barred from giving vent to a heckler's veto,[3] such a broad construction would unquestionably run afoul of the interest-balancing inherent in qualified immunity analysis.[4] Rather, we agree with Defendants—and the district court—that the issue here is properly framed as whether, at

---

[3]This Court has described the "heckler's veto" as "[h]istorically, one of the most persistent and insidious threats to first amendment rights," and defined it as "the successful importuning of government to curtail 'offensive' speech at peril of suffering disruptions of public order." *Berger v. Battaglia*, 779 F.2d 992, 1001 (4th Cir. 1985); *see also Forsyth Cnty., Ga. v. Nationalist Movement*, 505 U.S. 123, 134 (1992) ("Listeners' reaction to speech is not a content-neutral basis for regulation."). "Government's instinctive and understandable impulse to buy its peace—to avoid all risks of public disorder by chilling speech assertedly or demonstrably offensive to some elements of the public—is a recurring theme in first amendment litigation." *Berger*, 779 F.2d at 1001.

[4]Were we to define the right at stake in this case as Plaintiff urges, we would potentially hamstring law enforcement officials in the proper and legitimate exercise of their power to enforce public safety, including when those efforts may be narrowly tailored in recognition that content-based restrictions on speech will be strictly scrutinized. *See, e.g.*, *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983) (reciting the standard of review for content-based restrictions on speech).

Put another way, while true that there is a clearly established right to be free from prohibitions, restrictions and burdens on expression based solely on the heckler's veto, we must also be cognizant that "[t]he rights of free speech and assembly, while fundamental in our democratic society, still do not mean that everyone with opinions or beliefs to express may address a group at any public place and at any time." *Cox v. Lousiana*, 379 U.S. 536, 554 (1965). Rather, governmental entities retain the right to regulate the use of public streets to protect legitimate government interests in maintaining public order and avoiding violence, *id.* at 554-55, though in the case of content-based restrictions, such regulation must be narrowly drawn to serve compelling government interests, *Perry*, 460 U.S. at 45.

the time of Plaintiff's 2005 anti-abortion demonstration in Greenwood County, it was clearly established that law enforcement officers could not proscribe the display of large, graphic photographs in a traditional public forum.[5] We find that it was not.

In November 2005, the case law from this Court and the Supreme Court was ambiguous concerning whether asking demonstrators to remove such signs would be an impermissible infringement of their First Amendment rights. For example, there was no clear holding concerning whether such restrictions might be deemed content-based or content-neutral, a sometimes difficult and thorny question. *See Turner Broad. Sys. v. FCC*, 512 U.S. 622, 642 (1994) ("Deciding whether a particular regulation is content based or content neutral is not always a simple task."); *see also Ovadal v. City of Madison, Wis.*, 469 F.3d 625, 630 (7th Cir. 2006) (noting the fine distinction between a restriction to alleviate traffic concerns that is content-neutral if due to the distracting *presence* of protesters with such signs, but content-based if the *message* was what angered and distracted drivers).[6]

Indeed, as of November 2005, the Supreme Court had issued at least one opinion concerning anti-abortion protests suggesting that certain restrictions, even if made in response to the graphic and offensive nature of images to the viewer, might still be deemed content-neutral:

---

[5]In this case, no party challenges the district court's determination that Plaintiff's First Amendment rights were violated by Defendants' conduct. As such, we assume without deciding that the district court's holding on that question is correct.

[6]As noted above, because this issue is not before us on appeal, it remains today an open question in this Circuit. However, it is also persuasive, though not controlling, that by 2005, at least two other circuit courts had found similar restrictions on large, graphic signs in heavily trafficked areas to be content-neutral, not content-based. *See Frye v. Kansas City Mo. Police Dep't*, 375 F.3d 785, 791-92 (8th Cir. 2004); *Foti v. City of Menlo Park*, 146 F.3d 629, 641 (9th Cir. 1998).

The right to free speech, of course, includes the right to attempt to persuade others to change their views, and may not be curtailed simply because the speaker's message may be offensive to his audience. But the protection afforded to offensive messages does not always embrace offensive speech that is so intrusive that the unwilling audience cannot avoid it. Indeed, *it may not be the content of the speech, as much as the deliberate verbal or visual assault, that justifies proscription*. Even in a public forum, one of the reasons we tolerate a protester's right to wear a jacket expressing his opposition to government policy in vulgar language is because offended viewers can effectively avoid further bombardment of their sensibilities simply by averting their eyes.

*Hill v. Colorado*, 530 U.S. 703, 716 (2000) (emphasis added) (internal quotation marks and citations omitted); *see also Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) ("A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others. Government regulation of expressive activity is content neutral so long as it is *justified* without reference to the content of the regulated speech." (internal citations and quotations marks omitted)).

Additionally, even if Defendants should have been aware that they were engaging in content-based restrictions, subject to strict scrutiny, at that point in time, this Court had indicated in at least one anti-abortion protest case that "the State may act to protect its substantial and legitimate interest in traffic safety." *Lytle v. Doyle*, 326 F.3d 463, 470 (4th Cir. 2003); *see also Hill*, 530 U.S. at 715 ("It is a traditional exercise of the States' police powers to protect the health and safety of their citizens." (internal quotation marks and citation omitted)).

Likewise, the Supreme Court has repeatedly "recognized that there is a compelling interest in protecting the physical

and psychological well-being of minors," including from certain types of speech that may not be inappropriate for adults. *Sable Commc'ns of Cal., Inc. v. FCC*, 492 U.S. 115, 126 (1989). Further, the Supreme Court has "regularly rejected the assertion that people who wish to propagandize protests or views have a constitutional right to do so whenever and however and wherever they please." *United States v. Grace*, 461 U.S. 171, 177-78 (1983) (internal quotation marks and citation omitted).

Given this state of the law in 2005, it was not objectively unreasonable for Defendants to believe they could allow Plaintiff to continue its protest, but nevertheless remove the graphic signs in order to protect the public from potential traffic hazards based on the signs' proximity to the road and to prevent children from seeing the images. The record reflects that Major Smith approached Lefemine after Chief Deputy Frederick directed him to tell Plaintiff's members that "they could continue to protest but that they would either have to put away or take down the signs" because of the complaints. J.A. 361.

According to Chief Deputy Frederick's deposition, his instructions were "strictly based" on what he heard from Major Smith and Lieutenant Miles, and "[t]he message was an afterthought. The content was an afterthought." J.A. 91. He maintained that he based his decision on his belief that "the significant interest in the safety of these motorists who happened by the protest clearly outweighed the very minor burden to [Columbia Christians for Life's] free speech rights when we ordered them to stop presenting the incredibly graphic signs to the roadway." J.A. 90. In particular, he recalled that he was concerned by "the combination of [the signs'] graphic nature and their proximity to the roadway," J.A. 77, and referred to "their right to stand six inches from the roadway and conduct themselves as they were," J.A. 290.

We cannot say from these statements that Defendants were either "plainly incompetent" or "knowingly violat[ing] the

law," *Waterman*, 393 F.3d at 476, such that they should be denied qualified immunity for what the district court ultimately determined to be a mistaken judgment. Defendants believed they were acting in a content-neutral manner to safeguard legitimate, compelling government interests. We will not find such "[o]fficials . . . liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992).

For the foregoing reasons, we affirm the district court's grant of summary judgment on grounds of qualified immunity to Defendants in their individual capacities.

## B.

Next, Plaintiff argues that the district court abused its discretion by failing to rule on its request for declaratory relief. *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 289-90 (1995) (stating that the decision to rule on an action for declaratory relief will be reviewed for an abuse of discretion); *United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 493 (4th Cir. 1998) (same). However, as we read the district court's order and opinion, Plaintiff was indeed awarded summary judgment on its request for a declaratory judgment that Defendants' actions were an unconstitutional infringement on its First Amendment rights.

Plaintiff's motion for summary judgment specifically requested the following: (1) a judgment and decree declaring that Defendants' actions were an unconstitutional infringement of Plaintiff's First Amendment rights; (2) "a permanent injunction enjoining the Sheriff from applying their unconstitutional policy prohibiting [Columbia Christians for Life] from displaying pro-life signs in the public *fora* of Greenwood County"; (3) nominal damages; and (4) costs and attorney's fees.

In turn, the district court's order states that Defendants' motions for summary judgment are granted in part and denied

in part; Plaintiff's motion for summary judgment is also granted in part and denied in part; Plaintiff's request for attorney's fees is denied; and Defendants are "enjoined from engaging in content-based restrictions on Plaintiff's display of graphic signs without narrowly tailoring its restriction to serve a compelling state interest." J.A. 378.

Reconciling these two documents with the specific holdings on each issue in the district court's opinion, it is clear that the reference to granting summary judgment in part to Plaintiff must necessarily refer to Plaintiff's request for a declaratory judgment that its First Amendment rights were infringed. The injunction issued by the district court did not follow the language employed by Plaintiff in its motion for summary judgment, while the opinion and order concludes that Plaintiff's First Amendment rights were violated by Defendants' actions.

Further, we can discern no abuse of discretion in the district court's decision not to make the declaratory judgment more explicit, as Plaintiff unmistakably achieved judicial recognition that its constitutional rights had been violated. A remand for an additional judgment to that effect seems unnecessarily duplicative and wasteful of judicial resources, as well as improper in light of the district court's discretion to rule on such a request.

## C.

Finally, Plaintiff argues that the district court abused its discretion by failing to award it attorney's fees. Plaintiff maintains that it was the prevailing party in this § 1983 action and that as such it should "ordinarily recover attorney's fees unless special circumstances would render such an award unjust." *People Helpers Found., Inc. v. City of Richmond, Va.*, 12 F.3d 1321, 1327 (4th Cir. 1993).

We review the district court's decision regarding the award of attorney's fees for an abuse of discretion. *See* 42 U.S.C.

§ 1988(b) (2009) (providing that in an action brought under § 1983, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs"); *People for Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 370 (4th Cir. 2001). "A trial court abuses its discretion only if its conclusions are based on mistaken legal principles or clearly erroneous factual findings." *Id.* (citation omitted).

The Supreme Court has held that generally "plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit." *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 789 (1989) (internal quotation marks and citation omitted). "[A]t a minimum, to be considered a prevailing party within the meaning of § 1988, the plaintiff must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant." *Id.* at 792 (citations omitted); *see also People Helpers*, 12 F.3d at 1327-29 (citing and applying this language). "Beyond this absolute limitation, a technical victory may be so insignificant . . . as to be insufficient to support prevailing party status." *Tex. State Teachers*, 489 U.S. at 792.

In at least one case, the Supreme Court has found that a judicial determination that a plaintiff's civil rights had been violated, without more, was insufficient to render the plaintiff a "prevailing party" and thereby entitle him to an award of attorney's fees. *Hewitt v. Helms*, 482 U.S. 755, 763 (1987); *see also People Helpers*, 12 F.3d at 1327-29 (vacating an award for attorney's fees because the injunctive relief won by the plaintiff, which prohibited unlawful, but not legitimate, conduct by the defendant, "has not altered the relative positions of the parties").

Similarly, in this case, Plaintiff was awarded injunctive relief against Defendants, prohibiting them from "engaging in

content-based restrictions on Plaintiff's display of graphic signs without narrowly tailoring its restriction to serve a compelling state interest." J.A. 378. Put simply, the district court ordered Defendants to comply with the law and safeguard Plaintiff's constitutional rights in the future. No other damages were awarded.

The sole statement in the district court's opinion and order regarding attorney's fees reads as follows: "Under the totality of the facts in this case the award of attorney's fees is not warranted." J.A. 378. Although perhaps somewhat conclusory, when read in the context of the order as a whole, we do not find that the district court's "conclusions are based on mistaken legal principles or clearly erroneous factual findings." *Doughney*, 263 F.3d at 370. Rather, in light of the lack of findings that Plaintiff was a prevailing party within the meaning of § 1988 as well as the absence of any other damages award, this ruling is consistent with the conclusion that the outcome of this litigation "has not altered the relative positions of the parties." *People Helpers*, 12 F.3d at 1329.

Accordingly, we see no abuse of discretion in this ruling and thus affirm the district court's denial of attorney's fees to Plaintiff.

## D.

Defendants' sole issue on cross-appeal is that the district court erred in granting injunctive relief against Chief Deputy Frederick, who is no longer employed by the Greenwood County Sheriff's Office. In addition, according to Defendants, the award of injunctive relief against each of them in their individual capacities "should be considered dismissed as a duplicative claim," and injunctive relief against them in their official capacities "should be deemed dismissed under the law of the case."

At the outset, we note that despite Defendants' use of the term "erred," we review the district court's decision to grant

or deny injunctive relief for an abuse of discretion. *US Airline Pilots Ass'n v. Awappa, LLC*, 615 F.3d 312, 320 (4th Cir. 2010).

As previously stated, the decretal portion of the district court's opinion and order provides that "Defendants are enjoined from engaging in content-based restrictions on Plaintiff's display of graphic signs without narrowly tailoring its restriction to serve a compelling state interest." J.A. 378. The district court did not specify if "Defendants" referred to each person in his individual or official capacity. However, the section discussing Plaintiff's claims against Defendants in their official capacities states that those claims "are merely claims against the Greenwood County Sheriff's Office," but because Plaintiff failed to make a showing that the Office itself had a policy or custom to violate a citizen's First Amendment rights, "Defendants are immune from suit in their official capacity." J.A. 377.

The district court appears to have been analyzing whether Defendants might be liable for damages, not whether they could be subject to an injunction in either their official or individual capacities. Claims for declaratory and injunctive relief are not affected by qualified immunity. *Roller v. Cavanaugh*, 984 F.2d 120, 122 (4th Cir. 1993), *overruled in part on other grounds by Ca. Dep't of Corr. v. Morales*, 514 U.S. 499 (1995); *see also Pearson*, 555 U.S. at 242 (noting that defense of qualified immunity is not available in "§ 1983 cases against individuals where injunctive relief is sought instead of or in addition to damages"). Likewise, under the doctrine of *Ex Parte Young*, 209 U.S. 123 (1908), injunctive relief against a state officer in his official capacity may be appropriate if "the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (internal quotation marks and citation omitted).

Although Defendants contend that the termination of Frederick's employment with the Greenwood County Sheriff's Office means there is no "cognizable danger of recurrent violation," *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953), he is nonetheless still a police officer, albeit elsewhere in South Carolina. As such, the danger remains.

We see no abuse of discretion in the district court's decision to order Defendants to safeguard Plaintiff's First Amendment rights and refrain from impermissible content-based restrictions in the future. We affirm this portion of the district court's opinion and order.

### III.

In sum, we affirm the district court's grant of summary judgment to Defendants on grounds of qualified immunity, the denial of an award of attorney's fees to Plaintiff, and the grant of injunctive relief to Plaintiff against Defendants.

*AFFIRMED*