**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

## No. 13-1629

STEVEN LEFEMINE, d/b/a Columbia Christians for Life,

        Plaintiff - Appellant,

      v.

DAN WIDEMAN, individually and in his official capacity; MIKE FREDERICK, individually and in his official capacity; LONNIE SMITH, individually and in his official capacity; BRANDON STRICKLAND, individually and in his official capacity; SHERIFF TONY DAVIS, in his official capacity,

        Defendants – Appellees,

      and

GREENWOOD COUNTY SHERIFF'S OFFICE,

        Defendant.

Appeal from the United States District Court for the District of South Carolina, at Anderson. Henry M. Herlong, Jr., Senior District Judge. (8:08-cv-03638-HMH)

Argued: March 19, 2014        Decided: July 11, 2014

Before DUNCAN, WYNN, and DIAZ, Circuit Judges.

Reversed and remanded by published opinion. Judge Wynn wrote the opinion, in which Judge Duncan and Judge Diaz joined.

**ARGUED:** Steven W. Fitschen, NATIONAL LEGAL FOUNDATION, Virginia Beach, Virginia, for Appellant. Andrew Lindemann, DAVIDSON & LINDEMANN, P.A., Columbia, South Carolina, for Appellees. **ON BRIEF:** Robert D. Garfield, DAVIDSON & LINDEMANN, P.A., Columbia, South Carolina, for Appellee Mike Frederick. Russell W. Harter, Jr., CHAPMAN, HARTER & HARTER, P.A., Greenville, South Carolina, for Appellees Dan Wideman, Lonnie Smith, Brandon Strickland, and Tony Davis.

---

WYNN, Circuit Judge:

Plaintiffs who prevail in suits to vindicate civil rights are entitled to attorneys' fees unless special circumstances make a fee award unjust.

Here, Plaintiff Steven C. Lefemine, leader of the Columbia Christians for Life, successfully sued various Greenwood County Sheriff's Office officials for First Amendment violations. But the district court deemed "(1) the Defendants' qualified immunity, (2) the absence of a policy or custom of discrimination against abortion protestors by the Greenwood County Sheriff's Office, and (3) the limited nature of [Lefemine's] injunctive relief" to be special circumstances that made the award of attorneys' fees to Lefemine unjust.[1] We, however, hold that the relief Lefemine obtained was notably broader than the district court suggested and that the other two circumstances are not "special" and do not render a Section 1988 fee award unjust. Accordingly, we reverse.

I.

In November 2005, Lefemine and other members of his group Columbia Christians for Life demonstrated on a public sidewalk at the busiest intersection in Greenwood County, South Carolina.

---

[1] Lefemine v. Wideman, No. 8:08-3638-HMH, 2013 WL 1499152, at *4 (D.S.C. Apr. 9, 2013).

*Lefemine v. Wideman*, No. 8:08-3638-HMH, 2013 WL 1499152, at *1 (D.S.C. Apr. 9, 2013). They held large signs with graphic images of aborted fetuses hoping to "shock the consciences of those who [saw] the signs" and thereby convey Columbia Christians for Life's anti-abortion message. *Lefemine v. Wideman*, 672 F.3d 292, 296 (4th Cir.), *vacated* 133 S. Ct. 9 (2012).

Passers-by who saw the signs complained to the Greenwood County Sheriff's Office. For example, a mother who drove by the signs with her five-year-old son reported to the Sheriff's Office that her son "was 'screaming, crying' after seeing the signs." *Lefemine*, 672 F.3d at 296.

In response, Lieutenant Randy Miles informed the Columbia Christians for Life protestors that the Sheriff's Office had received "complaints about the graphic photographs" and that "this was causing a disturbance in the traffic flow at th[e] intersections." *Id.* (quotation marks omitted). At the direction of Chief Deputy Mike Frederick, Major Lonnie Smith instructed Lefemine to take the signs down. Major Smith explained that he would have "no other choice" but to ticket Lefemine for breach of the peace if the protestors continued to display the signs. *Lefemine*, 2013 WL 1499152, at *2. When Lefemine asserted that this demand violated the First Amendment, Major Smith responded: "You do not have a right to be offensive

4

to other people in that manner." Id. Ultimately, the protestors packed up the signs and left.

The following year, an attorney for the National Legal Foundation sent a letter on behalf of Columbia Christians for Life to Sheriff Dan Wideman. The letter informed Sheriff Wideman that "volunteers will be returning to the Greenwood area again in the near future to exercise their First Amendment freedoms by highlighting the national tragedy of abortion." J.A. 219. The letter asserted that Major Smith's actions the previous year "constituted content-based discrimination" and "a clear violation of its members' First Amendment rights." Id. Finally, the letter warned that "any further interference with [Columbia Christians for Life's] message by you or your officers will leave us no choice but to pursue all available legal remedies without further notice." Id.

Chief Deputy Frederick responded on behalf of the Sheriff's Office. He stated that the Office's actions the previous year "were absolutely content-neutral, in that [Major Smith] was enforcing existing roadway safety, public decency, and maintenance of order statutes in order to protect the motoring public from illegal and unwarranted distraction." J.A. 225. Chief Deputy Frederick declared that, faced with the same circumstances again, the Sheriff's Office would respond "in exactly the same manner: order the person(s) to stop or face

5

criminal sanctions . . . ." Id. Yet, despite the threat of "criminal sanctions[,]" Lefemine and Columbia Christians for Life returned to the same area in November 2006 and again in 2007—and those protests took place without incident.

In October 2008, Lefemine filed a suit alleging First Amendment violations and seeking a declaratory judgment, a permanent injunction, damages, and attorneys' fees. Following a hearing on the parties' cross-motions for summary judgment, the district court held that the Officers had violated Lefemine's First Amendment rights and enjoined the Officers "from engaging in content-based restrictions on [Lefemine's] display of graphic signs without narrowly tailoring [the] restriction to serve a compelling state interest." Lefemine v. Davis, 732 F. Supp. 2d 614, 627 (D.S.C. 2010).

Nevertheless, the district court held that Lefemine could not recover damages. It concluded that the Officers were entitled to qualified immunity because the unconstitutionality of their conduct had not previously been clearly established. The court further held that Lefemine failed to establish that the Sheriff's Office had a custom or policy of infringing on citizens' First Amendment rights. Finally, the district court refused to award Lefemine attorneys' fees.

On appeal, this Court affirmed on all issues. Lefemine sought and was granted certiorari by the United States Supreme

6

Court, which ultimately rebuffed our holding that Lefemine did not qualify as a "prevailing party" under Section 1988 and thus was not entitled to attorneys' fees. The Supreme Court held that "the injunction ordered the defendant officials to change their behavior in a way that directly benefited the plaintiff," thereby making him a "prevailing party." Lefemine v. Wideman, 133 S. Ct. 9, 10 (2012). However, because "[n]either of the courts below addressed whether any special circumstances exist[ed] in this case" making a fee award unjust, id. at 12, the Supreme Court remanded to us, and we, in turn, remanded to the district court to award fees unless the court determined by express findings that special circumstances rendered such an award unjust.

On remand, the district court found three special circumstances that made an attorneys' fees award to Lefemine unjust: "(1) the Defendants' qualified immunity, (2) the absence of a policy or custom of discrimination against abortion protestors by the Greenwood County Sheriff's office, and (3) the limited nature of the injunctive relief." Lefemine, 2013 WL 1499152, at *4. With this appeal, we now review the district court's ruling denying Lefemine his attorneys' fees under the abuse of discretion standard. Mercer v. Duke Univ., 401 F.3d 199, 203 (4th Cir. 2005) ("A district court's decision to grant

7

or deny attorney's fee[s] under [S]ection 1988 is reviewed for abuse of discretion.").

II.

A.

The Civil Rights Attorney's Fees Awards Act of 1976 authorizes the award of "a reasonable attorney's fee" to "the prevailing party" in certain civil rights actions, including suits brought under Section 1983.  42 U.S.C. § 1988(b).  "The purpose of [Section] 1988 is to ensure effective access to the judicial process" for persons with civil rights grievances. Hensley v. Eckerhart, 461 U.S. 424, 429 (1983) (quotation marks and citation omitted).

"Congress enacted [Section] 1988 specifically because it found that the private market for legal services failed to provide many victims of civil rights violations with effective access to the judicial process."  City of Riverside v. Rivera, 477 U.S. 561, 576 (1986) (citations omitted).  Congress attributed this market failure in part to the fact that "[t]hese victims ordinarily cannot afford to purchase legal services at the rates set by the private market."  Id. (citations omitted).

Crucially for this case, Congress also attributed the need for Section 1988 to public official immunities that severely limit money damages even in the face of success:  "[W]hile

8

damages are theoretically available under the statutes covered by [Section 1988], . . . in some cases, immunity doctrines and special defenses, available only to public officials, preclude or severely limit the damage remedy." Id. at 577 (quotation marks, citation, and emphasis omitted). Accordingly, "awarding counsel fees to prevailing plaintiffs in such litigation is particularly important and necessary if [f]ederal civil and constitutional rights are to be adequately protected.' House Report, at 9." Id. (quotation marks and citation omitted). See also Pulliam v. Allen, 466 U.S. 522, 527 (1984) (noting that "the legislative history of [Section] 1988 clearly indicates that Congress intended to provide for attorney's fees in cases where relief properly is granted against officials who are immune from damages awards" and noting that "awarding counsel fees to prevailing plaintiffs in such litigation is particularly important and necessary if [f]ederal civil and constitutional rights are to be adequately protected").

In light of Section 1988's language and purpose, a prevailing plaintiff "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." Hensley, 461 U.S. at 429 (citations and quotation marks omitted). "Courts have universally recognized that [the] special circumstances exception is very narrowly limited." Doe v. Bd. of Educ. of Baltimore Cnty., 165 F.3d 260, 264 (4th Cir.

9

1998) (quotation marks and citation omitted).  Indeed, "[o]nly on rare occasions does a case present such circumstances . . . ."  Id.  See also, e.g., DeJesus Nazario v. Morris Rodriguez, 554 F.3d 196, 200 (1st Cir. 2009) (stating that the special circumstances justifying denial of attorneys' fees are "few and far between").

For example, the Supreme Court recognized a special circumstance justifying the denial of attorneys' fees to a pro se plaintiff who was an attorney in Kay v. Ehrler, 499 U.S. 432 (1991).  A fee award would not further "the overriding statutory concern . . . in obtaining independent counsel for victims of civil rights violations."  Id. at 437.  The Supreme Court concluded that "[t]he statutory policy of furthering the successful prosecution of meritorious claims is better served by a rule that creates an incentive to retain counsel . . . ."  Id. at 438.

Similarly, in Chastang v. Flynn & Emrich Co. we recognized a rare special circumstance justifying the denial of attorneys' fees under Section 1988 where the plaintiffs' suit did not vindicate civil rights.  541 F.2d 1040 (4th Cir. 1976).  In Chastang, an employer's profit-sharing and retirement plan discriminated based on sex.  The discrimination had been legal when incorporated into the plan, could not be modified unilaterally by the defendants once it became illegal, but had

10

been amended "with reasonable dispatch . . . once the need for amendment was established" and in any event before the litigation began. Id. at 1045. We held that "[b]ecause the plan was amended to eliminate its illegally discriminatory aspects before plaintiffs' suits were filed, they cannot be said to have derived any benefit, direct or indirect, from the litigation." Id. Accordingly, we upheld the district court's finding of special circumstances. Id.

By contrast, in Bills v. Hodges, we held that the district court abused its discretion by denying successful civil rights plaintiffs their attorneys' fees under Section 1988. 628 F.2d 844 (4th Cir. 1980). In Bills, the plaintiffs' landlord served them with an eviction notice motivated by the plaintiffs' "biracial dating and entertainment practices." Id. at 845. The district court awarded the plaintiffs injunctive relief under the Civil Rights Act and Fair Housing Act but denied them attorneys' fees under Section 1988 because the plaintiffs "could well afford to hire their own lawyers" and because "the court felt the defendant acted in good faith." Id. at 847. We squarely rejected both of those "special circumstances" and held that the plaintiffs were "entitled to an award of attorneys' fees . . . ." Id.

B.

As stated previously, the district court here held that three "special circumstances" justified the denial of attorneys' fees to Lefemine: "(1) the Defendants' qualified immunity, (2) the absence of a policy or custom of discrimination against abortion protestors by the Greenwood County Sheriff's Office, and (3) the limited nature of [Lefemine's] injunctive relief." Lefemine, 2013 WL 1499152, at *4. Lefemine argues that in so doing, the district court committed reversible error. To determine whether the district court abused its discretion in determining that "special circumstances" justified denying Lefemine his fees, we examine each of the circumstances upon which the district court relied.

1.

The district court first found that a "special circumstance" arose from its determination that the Defendant Officers were entitled to qualified immunity. Because qualified immunity shielded the Defendant Officers from personal liability for damages, Lefemine was unable to obtain even nominal damages—the only remedy Lefemine sought but failed to obtain.[2] Lefemine, 672 F.3d at 297–301, 303. The district court deemed qualified

_____

[2] Although Lefemine's complaint included a prayer for "compensatory and/or nominal" damages, J.A. 21, Lefemine abandoned his quest for compensatory damages and sought only nominal damages at summary judgment.

12

immunity "special" such that it made an award of attorneys' fees under Section 1988 unjust.

But neither this Court nor the Supreme Court has ever held that qualified immunity constitutes a special circumstance supporting the denial of Section 1988 attorneys' fees. In fact, the case law suggests quite the opposite. As the Supreme Court has underscored, in many Section 1988 cases, "immunity doctrines and special defenses, available only to public officials, preclude or severely limit the damage remedy." Rivera, 477 U.S. at 577 (quotation marks and emphasis omitted). Accordingly, "awarding counsel fees to prevailing plaintiffs in such litigation is particularly important and necessary if [f]ederal civil and constitutional rights are to be adequately protected." Id. (quotation marks and citation omitted).

In its qualified immunity analysis, the district court sought to bolster its special circumstance finding by noting that "Defendants' actions [were] taken in good faith" and that "[i]t was never the Defendants' intent to infringe upon [Lefemine's] First Amendment rights . . . ." Lefemine, 2013 WL 1499152, at *5. Yet we, and our sister circuits, have repeatedly rejected good faith as a special circumstance justifying the denial of Section 1988 attorneys' fees—and for good reason: "The Civil Rights Attorney's Fees Awards Act is not meant as a 'punishment' for 'bad' defendants who resist

13

plaintiffs' claims in bad faith. Rather, it is meant to compensate civil rights attorneys who bring civil rights cases and win them." Williams v. Hanover Hous. Auth., 113 F.3d 1294, 1302 (1st Cir. 1997). See also, e.g., Bills, 628 F.2d at 847 ("The district court also refused to award attorneys' fees at least partly because the court felt the defendant acted in good faith. However, a defendant's good faith is not a special circumstance that would render an award of fees unjust."); Wilson v. Stocker, 819 F.2d 943, 951 (10th Cir. 1987) (noting that "the alleged special circumstances amount to no more than assertions that the Attorney General has acted in good faith, a ground overwhelmingly rejected by the courts" and that Section 1988 "is not designed to penalize defendants but to encourage injured individuals to seek relief"); Lampher v. Zagel, 755 F.2d 99, 104 (7th Cir. 1985) (calling the defendant's good faith "irrelevant" to a Section 1988 fee determination); Kirchberg v. Feenstra, 708 F.2d 991, 999 (5th Cir. 1983) ("Good faith is not a special circumstance.").

We believe that special government immunities that restrict civil rights plaintiffs' recoveries weigh in favor of—and certainly not against—awarding Section 1988 fees. The district court here erred in holding otherwise. Accordingly, we hold that the district court abused its discretion in denying an

14

attorneys' fee award to Lefemine because the Officer Defendants were shielded by qualified immunity.

2.

The district court also found that "the absence of a policy or custom of discrimination against abortion protestors by the Greenwood County Sheriff's Office" constituted a special circumstance that justified the denial of an attorneys' fee award under Section 1988. Lefemine, 2013 WL 1499152, at *4. We disagree.

Unless a government entity has a policy or custom of discrimination, a court will not attribute an individual's constitutional violations to the government entity. Monell v. Dep't of Soc. Servs. of the City of New York, 436 U.S. 658, 694 (1978) ("[A] local government may not be sued under [Section] 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under [Section] 1983."). Here, Lefemine failed to show that the Greenwood County Sheriff's Office had a policy or custom of discrimination. The Sheriff's Office thus could not be held liable for the Officer Defendants' constitutional

15

violations, and Lefemine could not obtain even nominal damages from the Sheriff's Office. Lefemine, 672 F.3d at 297-301.[3]

But neither this Court nor the Supreme Court has ever suggested that a plaintiff's inability to bring a viable Monell claim against a government entity somehow blocks otherwise prevailing civil rights plaintiffs from obtaining their attorneys' fees under Section 1988. And for good reason—because Section 1988 "is not meant as a 'punishment' for 'bad' defendants" but is instead "meant to compensate civil rights attorneys who bring civil rights cases and win them." Williams, 113 F.3d at 1302. It would turn Section 1988 on its head to suggest that a plaintiff who successfully sues government officials for civil rights violations should be denied attorneys' fees for the profoundly non-"special" circumstance that the entity for whom those officials work could not be held liable under Monell.

Again, "awarding counsel fees to prevailing plaintiffs in" civil rights litigation against government entities and officials "is particularly important and necessary if [f]ederal civil and constitutional rights are to be adequately protected." Rivera, 477 U.S. at 577 (quotation marks and citation omitted). The district court here erred in suggesting otherwise by deeming

---

[3] Though, again, nominal damages was the only relief Lefemine sought but failed to achieve.

16

the absence of a custom or policy a special circumstance. Denying Lefemine attorneys' fees on that basis constituted an abuse of discretion.

3.

Finally, the district court found that the limited nature of the relief granted to Lefemine constituted a special circumstance making a Section 1988 fee award unjust. Yet this factor, like the two before it, cannot support denying Lefemine his attorneys' fees.

The relief Lefemine obtained is notably broader than the district court acknowledged. Significantly, Lefemine obtained two of the remedies he sought: an injunction and a declaratory judgment against multiple defendants. Additionally, although the district court characterized the injunction as "extremely limited[,]" Lefemine, 2013 WL 1499152, at *7, it bars Defendants from future restrictions of Lefemine's graphic signs "without narrowly tailoring [the] restrictions to serve a compelling state interest." Lefemine, 732 F. Supp. 2d at 627. Particularly in light of Defendants' position that, faced with the same circumstances again, the Sheriff's Office would respond "in exactly the same manner: order the person(s) to stop or face criminal sanctions[,]" J.A. 225, the injunction's impact is hardly de minimis.

17

Moreover, while the district court accurately noted that Lefemine "was able to conduct two other protests without incident," Lefemine, 2013 WL 1499152, at *7, the fact that Defendants had not yet further violated Lefemine's First Amendment rights is of little moment. Defendants previously maintained that they would respond to a future protest in exactly the same way as they originally responded: by "order[ing] the person(s) to stop or face criminal sanctions." Lefemine, 732 F. Supp. 2d at 619 (quotation marks and citation omitted). The injunction bars that response. The fact that Lefemine appealed to this Court and then to the Supreme Court and won only further underscores that the significance of his case is not as "minimal" as the district court portrayed. Lefemine, 2013 WL 1499152, at *7.

In downplaying the relief Lefemine achieved, the district court looked to Mercer, 401 F.3d 199, which, in turn, looked to Farrar v. Hobby, 506 U.S. 103 (1992). Farrar, in which the Supreme Court affirmed the denial of attorneys' fees based on the limited nature of the plaintiff's relief, provides an instructive contrast to this case. In Farrar, the plaintiff sought $17 million in compensatory damages, alleging violations of his right to due process. 506 U.S. at 106. Yet the plaintiff was awarded only nominal damages. Id. at 107. The Supreme Court held that "[w]hen a [prevailing party] recovers

18

only nominal damages because of his failure to prove an essential element of his claim for monetary relief, the only reasonable fee is usually no fee at all." Id. at 115 (citation omitted).

In contrast to Farrar, Lefemine successfully proved the elements required to secure the relief he sought—namely, an injunction and a declaratory judgment. And, for the reasons discussed above, Lefemine could not have obtained money damages against the Defendants for reasons related not to the merits of his case, but rather to the special governmental immunities and defenses that weigh in favor of awarding fees. Accordingly, neither Mercer nor Farrar supports denying attorneys' fees here.

In sum, Lefemine obtained nearly all of the relief he sought—namely, declaratory and injunctive relief protecting his First Amendment rights. And the district court erred in holding that the "limited nature of relief granted" constituted a special circumstance making a fee award unjust. Lefemine, 2013 WL 1499152, at *7.

III.

Today, we hold that qualified immunity, the absence of a policy or custom of discrimination, and the nature of the relief granted here—whether considered individually or together through a "totality of the circumstances" lens—cannot support the denial

19

of attorneys' fees to Lefemine, a prevailing civil rights plaintiff. By denying Lefemine his fees on those bases, the district court abused its discretion, and, accordingly, is reversed.

Consequently, we remand this matter to the district court with instructions to allow Lefemine to make a fee application and for an ensuing determination of the reasonable fee award for Lefemine's successful prosecution of this civil rights matter, including "the time spent defending entitlement to attorney's fees . . . ."[4] Mercer, 401 F.3d at 202 n.3 (quotation marks and citation omitted).

REVERSED AND REMANDED

---

[4] "[T]he critical focus in calculating a reasonable attorney's fee is in determining the lodestar figure[,]" i.e., "[a] fee based upon reasonable rates and hours[.]" Daly v. Hill, 790 F.2d 1071, 1078 (4th Cir. 1986). Indeed, "[a] proper computation of the lodestar fee will, in the great majority of cases, constitute the 'reasonable fee' contemplated by [Section] 1988." Id.