# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

William Alvin Hueble, Jr., Petitioner,

v.

South Carolina Department of Natural Resources and Eric Randall Vaughn, Defendants,

Of Whom Eric Randall Vaughn is, Respondent.

Appellate Case No. 2012-212006

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal from Greenwood County
Eugene C. Griffith, Jr., Circuit Court Judge

---

Opinion No. 27631
Heard September 22, 2015 – Filed April 27, 2016

---

## REVERSED AND REMANDED

---

Gregory P. Harris and Jonathan S. Gasser, both of Harris & Gasser, LLC, of Columbia; and John P. Riordan, of Smith Moore Leatherwood, LLP, of Greenville, all for Petitioner.

Thomas E. Hite, Jr., of Hite & Stone, of Abbeville; James V. McDade, of Doyle Tate & McDade, PA, of Anderson; and Andrew F. Lindemann, of Davidson & Lindemann, PA, of Columbia, all for Respondent.

---

**JUSTICE HEARN:** The issue here is whether a plaintiff who obtained a Rule 68, SCRCP, judgment of $5,100 in his favor is a prevailing party within the meaning of the Civil Rights Act, 42 U.S.C. § 1988 (2006), and is therefore entitled to attorneys' fees. For the reasons discussed herein, we hold he is and reverse and remand for further proceedings consistent with this opinion.

## FACTUAL/PROCEDURAL BACKGROUND[1]

In 2003, William Alvin Hueble purchased 220 acres of farming and hunting property in Greenwood County. At the time of closing, the seller informed Hueble that Respondent Eric R. Vaughn, a corporal for the South Carolina Department of Natural Resources (DNR), had a personal deer stand on the property and had hunted there in the past. The seller indicated it would be a "good idea" to allow Vaughn continued access. Hueble declined the suggestion. During 2004, Hueble received a call from the seller informing him that Vaughn had recently been on the property and left four wheeler tracks. The seller again suggested that it would be in Hueble's "best interest" to allow Vaughn to hunt on the property, and provided Vaughn's phone number to Hueble. Hueble once again declined the suggestion and did not contact Vaughn.

Hueble then acquired additional land and invested substantial sums of money to improve and maintain his property for hunting. In the summer of 2005, Hueble planted his first dove field spanning fifteen acres. More than one month prior to the opening day of dove season, Hueble mowed all standing wheat/oats and disked the dove field twice. He believed the field was non-baited and in compliance with all regulations and guidelines.

On opening day, Hueble's friends and family joined him for the first hunt of the season. Shortly into the hunt, Vaughn and other DNR officers entered Hueble's property unannounced. Vaughn and the DNR officers gathered the hunters together and began threatening them with fines and confiscation of property for baiting the dove field. Vaughn dug into Hueble's property with a knife blade to produce seeds and claimed that one seed constituted baiting a field. During this interaction, Hueble learned Vaughn was the DNR officer the seller had mentioned. Ultimately, Hueble was the only hunter charged by DNR with baiting the field.

---

[1] Because this matter was resolved before trial, these facts are taken largely from the complaint.

Prior to the court date for the baiting charge, Hueble invited Vaughn out to his property to discuss any other concerns Vaughn had with the property. Vaughn stated that he had actively hunted on the land previously—including in the off seasons—and had considered purchasing the property when it was for sale, but did not have the financial resources to do so. Hueble ultimately pled no contest to the baiting charge, believing this would resolve Vaughn's animosity.

Prior to turkey season, Hueble prepared for a hunt by setting up two food plots with clover, and he plowed several strips of dirt. Just prior to opening day, game cameras revealed numerous turkeys on the property; however, on opening day there were no turkeys to be found. As Hueble attempted to locate the turkeys he had previously seen on camera, he encountered a trespasser on the property and discovered the game cameras had been manipulated. Hueble contacted Vaughn to report trespassers and to inquire whether Vaughn had any information about the incident. Vaughn admitted that he and other DNR officers had been on the property on several occasions to hunt in the month leading up to that day. Hueble believed Vaughn and other DNR officers had in fact been on his property before and after opening day and, during those visits, entered his barn and accessed his equipment. At this time, Vaughn also informed Hueble that his food plots were illegal baiting and that DNR officers were prepared to arrest Hueble and his invited guests if they hunted over the food plots.

Based on these encounters with Vaughn, Hueble believed that Vaughn had a "vendetta" against him and that Vaughn's supervisor was fully aware of the alleged threats he was making against Hueble. Because of these concerns, Hueble initiated a complaint with Vaughn's supervisor at DNR. However, the supervisor responded with allegations of Hueble's illegal activity based upon Vaughn's version of the events. Hueble was again accused of baiting, this time for using a fish feeder in his pond for duck hunting season. The supervisor later recanted and instead alleged Hueble used cracked corn for baiting.

As a result of these continued allegations, Hueble filed another complaint and requested an investigation by DNR. In response, Vaughn provided a written statement detailing Hueble's alleged baiting practices and accusing Hueble of providing false information to Vaughn's superior. Ten months later, following an internal investigation, DNR determined that Vaughn had not exceeded his authority.

Thereafter, Hueble filed a complaint against DNR and Vaughn asserting several state law causes of action, along with a claim pursuant to section 42 U.S.C.

§ 1983 (2006)[2] for the violation of his constitutional rights to due process and equal protection. In his answer, Vaughn asserted counterclaims against Hueble for slander, libel, abuse of process, and intentional infliction of emotional distress. Hueble then filed an amended complaint, in which he expanded his § 1983 claim to include an alleged violation of his Fourth Amendment rights to be protected against unreasonable searches and seizures. Vaughn again asserted the same counterclaims in his amended answer. In both complaints, Hueble sought attorneys' fees and costs for the § 1983 claim pursuant to 42 U.S.C. § 1988.[3]

Vaughn and DNR jointly moved for summary judgment, and at the hearing, the trial court encouraged the parties to settle. The same day, Vaughn and DNR

---

[2] 42 U.S.C. § 1983 states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

[3] 42 U.S.C. § 1988(b) states in pertinent part:

> In any action or proceeding to enforce a provision of section[] . . . 1983 . . . , the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity such officer shall not be held liable for any costs, including attorney's fees, unless such action was clearly in excess of such officer's jurisdiction.

offered Hueble $5,000 and a letter agreeing that Vaughn would be required to contact a supervisor before entering Hueble's property absent exigent circumstances. Hueble countered, requesting an additional term that Vaughn and DNR acknowledge Vaughn's wrongdoing; however, Vaughn and DNR would not agree to that term.

One month later, Vaughn and DNR made a joint offer of judgment pursuant to Rule 68 for $5,100. The offer of judgment stated, in pertinent part:

> Pursuant to Rule 68 of the South Carolina Rules of Civil Procedure, the Defendants, South Carolina Department of Natural Resources and Eric Randall Vaughn, hereby offer to allow judgment to be taken against them in the amount of Five Thousand One Hundred and No/100 ($ 5,100.00) Dollars. This offer shall remain valid for twenty (20) days after service of the same and shall be deemed withdrawn if not accepted within said time.

The offer of judgment made no mention of Vaughn having to obtain prior approval from his supervisor before entering the property; however, Hueble accepted it, and the court entered final judgment.

Thereafter, Hueble filed a motion for attorneys' fees and costs against Vaughn under Rule 54(d), SCRCP, and 42 U.S.C. § 1988.[4] In support of Hueble's motion, counsel submitted a memorandum, declaration of counsel as to attorneys' fees and costs, and documentation of $149,207.80 in attorneys' fees and costs. Unbeknownst to Hueble, two days before the motion was to be heard, Vaughn entered into a settlement agreement with Hueble's insurance carrier for $25,000. His counterclaims were subsequently dismissed.

At the hearing on attorneys' fees and costs, Vaughn and DNR opposed the motion on numerous grounds, including that Hueble was not the prevailing party for the purpose of receiving fees under § 1988 because the offer of judgment did not address the liability of costs and fees under § 1983; Hueble was precluded from bringing a § 1983 claim against DNR; Vaughn settled his counterclaims against Hueble for $25,000; and Hueble could not show that his recovery was based on his § 1983 claim against Vaughn. At the hearing, Hueble argued he was entitled to attorneys' fees because an offer of judgment had been entered in his favor, which

---

[4] DNR is not a party to this appeal because Hueble seeks attorneys' fees only on his civil rights claim, to which DNR is not subject under § 1983.

invoked § 1988. Vaughn countered that an offer of judgment alone could not qualify an individual as a prevailing party under South Carolina jurisprudence and, because both parties received some money, each party technically prevailed. Hueble explained that his homeowner's insurance settled with Vaughn, and he had no choice in the matter.

The trial court denied Hueble's motion, finding Hueble was not a prevailing party pursuant to § 1988, and even if he was, an award of attorneys' fees and costs would be unjust based on the special circumstances of the case. The trial court reasoned there had been no change in the legal relationship between the parties, and Vaughn settled his claim for five times the amount of Hueble's settlement. Additionally, the trial court held Vaughn did not achieve his desired outcome since he only received money, yet he had consistently maintained that the suit was not about money. The court of appeals affirmed. *Hueble v. S.C. Dep't of Nat. Res.*, Op. No. 2012-UP-081 (S.C. Ct. App. filed Feb. 15, 2012).

## ISSUES PRESENTED

I.      Did the court of appeals err in finding that Hueble's acceptance of an offer of judgment pursuant to Rule 68 did not entitle him to attorneys' fees and costs as a prevailing party under § 1988?

II.     Did the court of appeals err in affirming the trial court's finding that even if Hueble were a prevailing party, attorneys' fees and costs were not recoverable due to special circumstances?

## LAW/ANALYSIS

## I.      PREVAILING PARTY STATUS

Hueble argues the acceptance of an offer of judgment under the South Carolina Rules of Civil Procedure entitles him to collect attorneys' fees. Essentially, he contends he prevailed on his § 1983 claim, and therefore qualifies as a prevailing party pursuant to § 1988 because he obtained an enforceable judgment. We agree.[5]

---

[5] The trial court also determined Hueble could not be a prevailing party because the offer of judgment, made jointly by DNR and Vaughn, did not specify that it included the § 1983 claim. We find the offer of judgment included Hueble's § 1983 claim. The offer did not distinguish causes of action, and because it resolved

Hueble's argument raises a legal question, which we review de novo. *Transp. Ins. Co. v. S.C. Second Injury Fund*, 389 S.C. 422, 427, 699 S.E.2d 687, 689 (2010) (holding questions of statutory interpretation are questions of law which are subject to de novo review and which the Court is free to decide without any deference to the court below). Hueble filed this action in state court and accepted the offer of judgment pursuant to Rule 68, SCRCP; accordingly, South Carolina's procedural rules control. Rule 68 provides in pertinent part:

> **(a) Offer of Judgment.** Any party in a civil action . . . may file, no later than twenty days before the trial date, a written offer of judgment signed by the offeror or his attorney, directed to the opposing party, offering to take judgment in the offeror's favor, or to allow judgment to be taken against the offeror for a sum stated therein, or to the effect specified in the offer.

This Court has previously held that Rule 68 includes costs, but attorneys' fees are not automatically included. *Steinert v. Lanter*, 284 S.C. 65, 66, 325 S.E.2d 532, 533 (1985) (holding a prior statute governing offers of judgment must be strictly construed to allow recovery of costs and not attorneys' fees). As a result, in order to collect attorneys' fees following an offer of judgment, South Carolina courts have required that a specific statute or rule authorize a party to collect attorneys' fees. *Id.*; *Black v. Roche Biomed. Labs.*, 315 S.C. 223, 433 S.E.2d 21 (Ct. App. 1993) (noting that generally costs, fees, and disbursements are allowed when judgment is entered if they are provided for under specific statute or rule).

Congress has expressly provided that a successful party in a § 1983 claim has a statutory right to seek attorneys' fees pursuant to the fee-shifting provision of § 1988, which was designed to incentivize attorneys to litigate civil rights cases. *City of Riverside v. Rivera*, 477 U.S. 561, 576 (1986) ("Congress enacted § 1988 specifically because it found that the private market for legal services failed to provide many victims of civil rights violations with effective access to the judicial process."); *Lefemine v. Wideman*, 758 F.3d 551, 555 (4th Cir. 2014) (explaining

the entirety of Hueble's case, we interpret it to address all the claims involved— including the § 1983 action. *See Mathis v. Brown & Brown of S.C., Inc.*, 389 S.C. 299, 309, 698 S.E.2d 773, 778 (2010) (finding if the language of a contract creates an ambiguity, a court will construe any doubt and ambiguity against the drafter); *Hennessy v. Daniels Law Office*, 270 F.3d 551, 553 (8th Cir. 2001) (explaining an offer of judgment is generally treated as an offer to make a contract).

the purpose of § 1988 is to "'ensure effective access to the judicial process'" for individuals with civil rights claims (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983))). Section 1988(b) provides that in federal civil rights actions "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). Accordingly, in order to be awarded attorneys' fees, a party must first demonstrate that he is a prevailing party.

Therefore, our inquiry becomes whether a party who accepts an offer of judgment pursuant to Rule 68 qualifies as a prevailing party under § 1988 for the purpose of attorneys' fees. This is a question of first impression in this state with respect to a § 1983 claim. Accordingly, we look to federal interpretation for guidance. *See James v. City of Boise*, 577 U.S. __, __ (2016) (per curiam) (slip op. at 1–2) (explaining once the United States Supreme Court has interpreted the meaning of a federal statute it is the duty of other courts to "respect that understanding of the governing rule of law" (quoting *Nitro-Lift Techs., L.L.C. v. Howard*, 568 U.S. __, __ (2012) (per curiam) (internal quotation marks omitted))); *Laffitte v. Bridgestone Corp.*, 381 S.C. 460, 474 n.10, 674 S.E.2d 154, 162 n.10 (2009) (noting that where the state rule has adopted the language of a federal rule, federal cases interpreting the federal rule are persuasive).

To determine if a party qualifies as a prevailing party, the United States Supreme Court set forth a two-part test in *Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources*, 532 U.S. 598 (2001). The Supreme Court held that for a party to be considered a prevailing party, there must be a "material alteration of the legal relationship of the parties," and there must be "judicial imprimatur on the change." *Id.* at 604, 605 (emphasis in original) (internal quotation marks omitted). Thus, it is not enough for a desired outcome to occur to attain "prevailing party" status. Rather, it requires both a change on the part of the parties and an enforceable acknowledgement by a court. Significantly, the Supreme Court explained that interlocutory victories or a voluntary change in conduct each lack the "necessary judicial imprimatur." The Supreme Court also clarified that "'a party in whose favor a judgment is rendered, regardless of the amount of damages awarded . . . ,' is a "prevailing party" for purposes of the various federal fee-shifting statutes. *Id.* at 603 (alteration in original) (quoting *Prevailing party*, Black's Law Dictionary (7th ed. 1999)).

In embracing the *Buckhannon* analysis, we hold that Hueble qualifies as a prevailing party. First, a judgment in favor of Hueble and against Vaughn and DNR was entered for $5,100. This judgment materially altered the legal

relationship between the parties by imposing an enforceable obligation against Vaughn and DNR to pay Hueble $5,100. While Hueble did not receive all of the requested relief, that is not the test; rather, the test is whether he received meaningful relief. *Fox v. Vice*, 131 S. Ct. 2205, 2214 (2011) ("A civil rights plaintiff who obtains meaningful relief has corrected a violation of federal law and, in so doing, has vindicated Congress's statutory purposes."); *Tex. Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 783 (1989) (explaining a prevailing party is "one who has succeeded on any significant claim affording it some of the relief sought").

Second, Hueble has satisfied the prong of judicial imprimatur because a trial court has the authority to enforce a judgment of record. *See* S.C. Code Ann. § 15-35-530 (2005) (explaining the effect of the entry of a judgment roll to the clerk of court). We reach this decision upon a review of the implications of Rule 68 and the meaning of judicial imprimatur as outlined by the Supreme Court. Federal courts addressing Rule 68 judgments after *Buckhannon* have found acceptance of an offer of judgment conveys prevailing party status. *Grissom v. Mills Corp.*, 549 F.3d 313, 319 (4th Cir. 2008) (finding the acceptance of an offer of judgment, pursuant to Rule 68, FRCP, satisfied the *Buckhannon* two-part test); *Util. Automation 2000, Inc. v. Choctawhatchee Elec. Co-op., Inc.*, 298 F.3d 1238, 1248 (11th Cir. 2002) (holding Rule 68 judgment for $45,000 conferred prevailing party status by changing the legal relationship and establishing judicial imprimatur even though a "court exercises little substantive review over a Rule 68 offer"). Here, a Rule 68 offer was filed with the court and the clerk entered the judgment, making it judicially enforceable. As such, acceptance of a Rule 68 offer falls squarely within the meaning of prevailing party.[6] We therefore find Hueble met the requirements of *Buckhannon* by achieving some meaningful relief on the merits which altered the legal relationship between the parties by modifying the behavior of both Hueble and Vaughn.

## II.    SPECIAL CIRCUMSTANCES

The trial court also found that even if Hueble were a prevailing party, special circumstances existed that precluded him from recovering attorneys' fees. Hueble argues that the special circumstances exception is to be applied narrowly, and the facts in this case do not warrant the denial of attorneys' fees. We agree.

---

[6] At least one other state court has considered this issue and resolved it similarly. *See Daffron v. Snyder*, 854 N.E.2d 52, 56 (Ind. Ct. App. 2006) (holding the acceptance of an offer of judgment qualifies for prevailing party status).

While we reviewed the issue of prevailing party status de novo, we review a trial court's decision to award or deny attorneys' fees for an abuse of discretion. *Heath v. Cty. of Aiken*, 302 S.C. 178, 182, 394 S.E.2d 709, 711 (1990). "An abuse of discretion occurs when the conclusions of the trial court are either controlled by an error of law or are based on unsupported factual conclusions." *Kiriakides v. Sch. Dist. of Greenville Cty.*, 382 S.C. 8, 20, 675 S.E.2d 439, 445 (2009). The specific amount of attorneys' fees awarded pursuant to a statute authorizing reasonable attorneys' fees is left to the discretion of the trial judge and will not be disturbed absent an abuse of discretion or an error of law. *Layman v. State*, 376 S.C. 434, 444, 658 S.E.2d 320, 325 (2008).

The United States Supreme Court has held that ordinarily, a party who prevails on a claim pursuant to the Civil Rights Act should recover attorneys' fees unless special circumstances would make an award unjust. *Newman v. Piggie Park Enters.*, 390 U.S. 400, 402 (1968) (per curiam); *Hensley*, 461 U.S. at 429. "Courts have universally recognized that [the] special circumstances exception is very narrowly limited." *Doe v. Bd. of Educ. of Balt. Cty.*, 165 F.3d 260, 264 (4th Cir. 1998) (citations omitted) (internal quotation marks omitted). As such, it is only in rare occasions that a case presents circumstances unique enough to justify denying a prevailing party attorneys' fees. *Lefemine*, 758 F.3d at 555; *see also, e.g.*, *De Jesús Nazario v. Morris Rodríguez*, 554 F.3d 196, 200 (1st Cir. 2009) (stating that the special circumstances justifying denial of attorneys' fees are "few and far between"). Neither the statutory language of § 1988 nor the accompanying legislative history clearly establishes guidelines to delineate the confines of what suffices as special circumstances. Likewise, the Supreme Court has offered little guidance as to what constitutes special circumstances, and federal circuits have not uniformly adhered to any standard, instead cultivating a case-by-case approach.[7]

---

[7] While there is no exhaustive list of special circumstances, courts have typically interpreted the concept narrowly, applying it only in limited situations. *United States ex rel. Averback v. Pastor Med. Assocs.*, 224 F. Supp. 2d 342, 351 (D. Mass. 2002) (denying fees because of plaintiff's failure to maintain reliable contemporaneous time records); *Mindler v. Clayton Cty.*, 864 F. Supp. 1329, 1321 (N.D. Ga. 1994) (denying fees when plaintiff made an untimely application). Courts have also rejected a number of purported special circumstances. *See Walker v. City of Mesquite*, 313 F.3d 246, 251 (5th Cir. 2002) (holding defendant's good faith conduct does not establish special circumstances); *Jones v. Wilkinson*, 800 F.2d 989, 991 (10th Cir. 1986) (holding a plaintiff's ability to pay attorneys' fees is not a special circumstance); *Davidson v. Keenan*, 740 F.2d 129, 133 (2d Cir.

In finding the circumstances of this case did not warrant an award of attorneys' fees, the trial court relied primarily on three things: that Hueble's recovery was only nominal, that he failed to obtain the desired relief of barring Vaughn from entering the property, and that Vaughn's counterclaim was settled for almost five times the amount Hueble recovered. We disagree that these facts constitute special circumstances sufficient to justify denying fees in this case.

Initially, we view the first two reasons as intertwined, and therefore consider them together. The trial court apparently perceived the award as merely a technical victory because it was for a limited sum and did not include the injunctive relief Hueble sought. We find the award neither nominal nor merely technical in nature. For guidance, we turn to *Farrar v. Hobby*, in which the Supreme Court confronted the question of whether a civil-rights plaintiff who received a nominal award was a prevailing party eligible to receive attorneys' fees under § 1988. 506 U.S. 103, 105 (1992). In *Farrar*, state officials closed a school for troubled teens and pursued and received an indictment against the owner. *Id.* The owner sued, alleging deprivation of liberty and property without due process. *Id.* at 106. Following the owner's death, the administrators of the estate sought $17 million in damages, but were awarded only $1 in nominal damages. The jury found that one defendant had deprived one plaintiff of a civil right, but ultimately concluded that defendant's conduct did not proximately cause any damage suffered by the plaintiff. *Id.* at 106.

The Court clarified that a party who wins nominal damages on a § 1983 claim *is* a prevailing party for purposes of attorneys' fees under § 1988. *Id.* at 112. However, the Court explained that "[a]lthough the 'technical' nature of a nominal damages award or any other judgment does not affect the prevailing party inquiry, it does bear on the propriety of fees awarded under § 1988." *Id.* at 114. In determining the reasonableness of fees under § 1988, the Court continued, "'the most critical factor . . . is the degree of success obtained.'" *Id.* (quoting *Hensley*, 461 U.S. at 436). Thus, when a plaintiff seeking compensatory damages "recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief, the only reasonable fee is *usually* no fee at all." *Id.* at 115 (emphasis added) (internal citation omitted). Accordingly, when a plaintiff's victory is purely technical or *de minimus*, which often is reflected by a nominal-damages award, the plaintiff should not receive attorneys' fees. *Id.*

---

1984) (finding a defendant's reliance on the advice of counsel does not create special circumstances).

While we recognize the *Farrar* majority offered limited guidance as to how a court should approach this inquiry, the concern expressed is quite clear: where a plaintiff has failed to prove an essential element of his claim—that he was *actually* damaged—it would be unjust to allow attorneys' fees. As previously noted, the award of attorneys' fees encourages the pursuit of cases involving the infringement of civil rights because we hold those rights to be sacrosanct; awarding fees for pyrrhic victories does nothing to further that purpose. However, we find the award here is neither technical nor *de minimus*. We acknowledge Hueble repeatedly asserted this was not a case about money, and he failed to receive his primary objective—an injunction; however, simply because a plaintiff does not receive exactly what he asks for does not mean he has not suffered an injury. Furthermore, although he did not assert a specific sum, Hueble alleged actual damages. In our view, Hueble's recovery of $5,100 is not an insubstantial sum, and Vaughn's decision to enter voluntarily into the offer of judgment further reflects that Hueble had established his claim.[8]

We are further unpersuaded that Vaughn's recovery for his counterclaims has any bearing on the fairness of the award. Again, our concern here lies with the infringement on a civil right and enabling litigation designed to curtail unconstitutional behaviors. Regardless of the end result of any other claims in the suit, Hueble prevailed on his claim that a number of his fundamental rights had been violated and he was damaged by this encroachment. *See Hensley*, 461 U.S. at

---

[8] We note that Justice O'Connor authored a concurring opinion in *Farrar*, suggesting courts consider the following factors when determining whether attorneys' fees are warranted in a nominal damages case: the extent of relief, the significance of the legal issue on which the plaintiff prevailed, and the public purpose served by the litigation. *Id.* at 122 (O'Connor, J., concurring). Several federal circuits have adopted this approach. *See Mercer v. Duke Univ.*, 401 F.3d 199 (4th Cir. 2005) (adopting the three-part test for reviewing requests for attorneys' fees in civil rights cases involving nominal damages for technical success articulated by Justice O'Connor); *Phelps v. Hamilton*, 120 F.3d 1126, 1131–32 (10th Cir. 1997) (same); *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996) (same); *Jones v. Lockhart*, 29 F.3d 422, 423–24 (8th Cir. 1994) (same); *Cartwright v. Stamper*, 7 F.3d 106, 109 (7th Cir. 1993) (same). While we believe Justice O'Connor's factors are insightful and may be utilized under certain circumstances, we find their application unnecessary here, where the award was not *de minimus* and an offer of judgment rather than a trial was involved.

435 (explaining that Congress's intent to limit awards requires unrelated claims be treated as separate lawsuits in evaluating attorneys' fees as a prevailing party)

Relying on *Farrar*, the dissent would allow Vaughn's award on his counterclaims to vitiate Hueble's success in this § 1983 claim. We find this reasoning misplaced. *Farrar* addressed a circumstance where a jury awarded the plaintiff $1—which the Court concluded was merely technical or *de minimus* in light of his request for $17,000,000. As discussed, *supra*, we do not find Hueble's award for $5,100 *de minimus* in nature, and we cannot agree it can be so dismissively likened to an award for $1. Moreover, the dissent fails to acknowledge that Hueble's and Vaughn's awards are independent. *See Hensley*, 461 U.S. at 435 (explaining that in cases alleging § 1983 claims, unrelated claims should be treated as a separate lawsuit when evaluating attorneys' fees). The independent success of a permissive counterclaim has no bearing on the merit of Hueble's award. A § 1983 claim is frequently accompanied by other claims and counterclaims. The measure of success for a civil rights' claim should not depend on the success of unrelated claims. This practice would eviscerate Congress's expressed desire to incentivize attorneys to take on civil rights' litigation and condone civil rights' violations by creating a means to escape the payment of attorneys' fees and costs when a party is successful on unrelated permissive claims. *Rivera*, 477 U.S. at 576.

Accordingly, we reverse the court of appeals and hold the trial court erred in denying Hueble attorneys' fees. We therefore remand this case to the trial court for a determination of the reasonable amount of attorneys' fees.

## CONCLUSION

For the foregoing reasons, we reverse the court of appeals and remand for further proceedings.

**PLEICONES, C.J., BEATTY, J., and Acting Justice Jean H. Toal, concur. KITTREDGE, J., dissenting in a separate opinion.**

**JUSTICE KITTREDGE**:  I respectfully dissent.  Even if I were to accept the majority's premise that "a plaintiff who obtained a Rule 68, SCRCP judgment of $5,100 in his favor is a prevailing party within the meaning of the Civil Rights Act, 42 U.S.C. § 1988,"[9] I would nonetheless find no abuse of discretion in the trial court's denial of Petitioner's request for attorney's fees.  Section 1988(b) provides that "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs."  The language of the statute speaks to a prevailing party's eligibility for attorney's fees, not an automatic entitlement to attorney's fees.  The trial court, in the exercise of its discretion, determined that special circumstances precluded an award of attorney's fees to Petitioner.  It seems to me that ample evidence supports the trial court's finding of special circumstances, and I would resolve the appeal on that basis.

My main point of disagreement with the majority is its decision to turn a blind eye to the resolution of Respondent's counterclaim, as the majority is "unpersuaded that [Respondent] Vaughn's recovery for his counterclaims has any bearing on the fairness of the award."  In my judgment, the relative magnitude of relief obtained is a key factor in this analysis.  *See Farrar v. Hobby*, 506 U.S. 103, 113–14 (1992) (recognizing that although the relative degree of success may not preclude a prevailing party's "eligibility for a fee award," the "degree of the plaintiff's overall success" is "'the most critical factor' in determining the reasonableness of the fee award" (quoting *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 793 (1989))).  I would not myopically ignore the fact that Petitioner paid Respondent almost five times the amount Petitioner recovered pursuant to the Rule

---

[9]  I acknowledge the laudable policy goals Congress sought to achieve in enacting 42 U.S.C. § 1983—and, as the majority recognizes, that "the fee-shifting provision of § 1988 . . . was designed to incentivize attorneys to litigate civil rights cases."  I caution, however, against a broad reading of Rule 68, SCRCP, as a basis for seeking attorney's fees.  In *Belton v. State*, 339 S.C. 71, 529 S.E.2d 4 (2000), we explained that when judgment is entered pursuant to a Rule 68 offer of judgment, the allowable costs do not include attorney's fees; however, we noted that attorney's fees may be taxed if otherwise allowed by statute or rule.  *Id.* at 73, 529 S.E.2d at 5.  In *Belton*, we were presented with a claim for attorney's fees pursuant to a Whistleblower action resolved pursuant to a Rule 68 offer of judgment.  At that time, the Whistleblower Act provided for "reasonable attorney's fees" where there is a "court or jury award."  *Id.* at 74, 529 S.E.2d at 5.  Because a Rule 68 offer of judgment did not qualify as a "court or jury award," we rejected the claim for attorney's fees.  Once a Rule 68 offer of judgment is accepted, the resulting entry of judgment is a ministerial act.

68 offer of judgment. The parties, through their negotiated settlement, reached a resolution of the relative value of their competing claims. The majority seeks to excuse Petitioner from his payment of $25,000 to Respondent because it was paid "[u]nbeknownst to [Petitioner] Hueble [by his] insurance carrier." The fact that Petitioner's insurance carrier wrote the check is of no moment. Moreover, unlike the majority, I view Respondent's counterclaims as compulsory because they arise out of the "transaction or occurrence that is the subject matter" of the Amended Complaint. Rule 13(a), SCRCP ("A pleading *shall* state as a counterclaim any claim which . . . the pleader has against the opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim . . . ." (emphasis added)). Try as it might, the majority cannot give Petitioner a pass on the payment of $25,000 to settle Respondent's counterclaims.

Under the circumstances of this case, when the resolution of the dispute is considered in its entirety, the trial court did not abuse its discretion in denying Petitioner's request for attorney's fees. *See Farrar*, 506 U.S. at 115 (noting that, in some circumstances, "even a plaintiff who formally 'prevails' under § 1988 should receive no attorney's fees at all," and explaining that sometimes "the only reasonable fee is [] no fee at all"). Absent an abuse of discretion by the trial court, which does not exist here, we must uphold the trial court. I would affirm the court of appeals in result.